Roman, J.,
dissents and votes to affirm the judgment, with the following memorandum: While the majority finds that the prosecutor’s questioning and summation remarks improperly created the impression that Patricia Drake had implicated the defendant in the shooting, I disagree with the conclusion that these errors require reversal of the defendant’s convictions. In my view, the other evidence of the defendant’s guilt, which included the testimony of three disinterested eyewitnesses to the shooting and additional corroborating evidence, was overwhelming, and there was no reasonable possibility that the errors complained of contributed to the defendant’s convictions (see People v Crimmins, 36 NY2d 230, 237 [1975]; People v Taylor, 40 AD3d 782, 785 [2007]). Therefore, I respectfully dissent.
At the second trial, the aforementioned witnesses, Rukaiyah Long-Akrum, Karima Crosby, and Cassandra Cannon, testified that, in the early hours of January 1, 1991, they were sitting on a bench outside 5624 Farragut Road in Brooklyn with several other friends, including William Smith, when they observed the defendant emerge from that building. The defendant approached the group, and asked whether they had seen an individual who had been at a party upstairs.
The three witnesses consistently described the defendant as a light-skinned male, wearing a Kufi-style cap, and Crosby and Cannon recalled that the defendant had facial hair and wore a light-colored sweater. The witnesses testified that when nobody responded to the defendant, he demanded “answers.” According to two of the witnesses, Smith replied to the defendant that “everyone wants answers but we can’t always have them.” The three witnesses agreed that the defendant and Smith started to argue, and maneuvered themselves behind the bench.
At this point, Long-Akrum and Cannon observed the defend *771 ant pull out a gun. Long-Akrum and Crosby both testified that Smith said, “If you’re going to bust me, bust me now,” or “If you’re going to buzz me, buzz me now.” Long-Akrum and Cannon then observed the defendant shoot Smith in the face. While Crosby did not see the defendant holding the gun, she testified that she heard a single gunshot, and then saw Smith lying on the ground. There is no indication that any other person in the vicinity had a gun, and Long-Akrum testified that there was nobody else out in the courtyard where the shooting took place other than her group of friends and the defendant. Immediately after the shooting, the witnesses ran to Crosby’s apartment, where Long-Akrum called the police to report the incident. Based on the police investigation that same day, January 1, 1991, the defendant became a suspect in the shooting.
The witnesses’ testimony regarding the shooting was consistent with the forensic evidence, which showed that Smith died of a single gunshot wound to the face caused by a .380 caliber bullet, and that one .380 caliber shell casing was recovered from the scene of the crime. Moreover, as the People correctly point out, the witnesses’ testimony was corroborated by extensive circumstantial evidence, including that the shooting occurred in the same housing project complex where the defendant resided, and in which Crosby had seen the defendant at a New Year’s Eve party at the apartment of the defendant’s sister just before the shooting.
While the majority points out that Crosby had consumed alcohol on the night of the shooting, this fact was fully explored at trial and did not render Crosby’s testimony incredible, especially when considered cumulatively and in conjunction with the testimony of the other eyewitnesses (see People v Littebrant, 55 AD3d 1151, 1155 [2008]; see also People v Thompson, 75 AD3d 760, 763 [2010]; People v Dennis, 223 AD2d 599, 600 [1996]). Indeed, the record reveals that the “witnesses related their observations in a logical and lucid manner at trial” (People v Washington, 143 AD2d 707, 707 [1988] [rejecting the defendant’s contention that his guilt was not established beyond a reasonable doubt by the testimony of two prosecution witnesses who were concededly intoxicated at the time they made their observations relating to the crime]).
In addition, although the second trial was conducted approximately 20 years after the homicide, this delay was caused by the defendant’s departure from New York shortly after the shooting. The defendant moved to Alabama and started using the name Rasheed Hamid (see People v Lendore, 36 AD3d 940, 940 [2007] [“Evidence of flight is admissible as circumstantial *772 evidence of consciousness of guilt”]). Notably, the defendant’s girlfriend, Karen Wynter, testified that, after New Year’s Day, January 1, 1991, the next time she heard from the defendant was in mid-January 1991, and that he was then “down south.” The defendant was ultimately apprehended in August 2007, after he tried to obtain a driver’s license in Alabama under his alias by using forged documentation.
Further, the jury did not specifically request a readback of any particular statement by, or testimony of, Patricia Drake. Rather, the jury sent out a note, designated as “Number two,” in which it asked, “do we have any testimony or statement from Drake?” The court responded as follows: “Number two is easy. The parties agree there is no testimony or statement from Drake, who, of course, was not a witness at this trial.” Thus, the jury was aware that Drake did not provide any statement or testimony at the second trial.
Finally, while the majority correctly points out that the jury deliberated over the course of four days, the record reflects that the jury only deliberated for approximately one hour on the first day.
Accordingly, in light of the foregoing, I conclude that reversal of the defendant’s conviction is not warranted because the errors complained of were harmless beyond a reasonable doubt (see People v McAuliffe, 36 NY2d 820 [1975] [the admission of testimony from a police officer that created an erroneous impression that a major nontestifying witness had implicated the defendant before the grand jury was harmless beyond a reasonable doubt, where the other evidence of the defendant’s guilt, including the testimony of three witnesses regarding the defendant’s role in the crime, was overwhelming, and there was no reasonable possibility that the error might have contributed to his conviction]; People v James, 289 AD2d 506 [2001]; People v Means, 152 AD2d 751, 751-752 [1989]).